UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB 10  P 1: 45

)
STAPLES, INC., and                     **05 ~ 10274 WGY** DISTRICT COURT
SMILEMAKERS, INC.                                         OF MASS.
)
                    Plaintiffs,         )
                                        )   Civil Action No. _____
                                        )
v.                                      )
                                        )
BRADY GRAVETT and                       )   **VERIFIED COMPLAINT**
ORIENTAL TRADING COMPANY, INC.          )
                                        )   RECEIPT # _____
                    Defendants.         )   AMOUNT $ 250
                                        )   SUMMONS ISSUED ✓ℓ⌐
_____   LOCAL RULE 4.1 _____
                                            WAIVER FORM _____
                                            MCF ISSUED _____
                    **INTRODUCTION**        BY DPTY. CLK. _____
                                            DATE 2/10/05

1.     Staples, Inc., and its wholly owned subsidiary SmileMakers, Inc. ("SmileMakers"

or the "Company"), bring this suit against SmileMakers' former employee, Brady Gravett

("Gravett"), a current resident of Greenville, South Carolina, and his current employer, Oriental

Trading Company, Inc. ("OTC"), seeking injunctive relief to: enforce their non-competition,

non-solicitation and confidentiality covenants with Gravett; prevent his new employer OTC from

interfering with these covenants; and prevent Gravett and OTC from interfering with

SmileMakers' advantageous business relations.  In addition, the Company seeks monetary

damages.

2.     SmileMakers hired Gravett on September 14, 1998, as a Merchandiser.  He

worked at SmileMakers in that position until his sudden resignation on April 16, 2004.  When

SmileMakers first hired him in 1998, he executed a Confidentiality and Non-Competition

Agreement.  In or about June 2002, Staples, Inc. bought Medical Arts Press, Inc. and its wholly

owned subsidiary SmileMakers, Inc.  At the time of that purchase, Staples required that Gravett

sign a new "Non-Compete and Non-Solicitation Agreement" as well as a "Proprietary and Confidential Information Agreement" relating to his employment at SmileMakers. During his employment at SmileMakers, Gravett established relationships with SmileMakers' vendors, including its key licensed sticker vendor, Sandy Lion, as well as SmileMakers' toy suppliers.

3.    Immediately after he resigned from SmileMakers, Gravett went to work for OTC, SmileMakers' largest toy supplier. Gravett helped them launch for the first time a competing licensed sticker product, concealing his involvement with OTC's competing business endeavors from SmileMakers. Gravett and OTC both knew that his employment at OTC violated his non-competition obligations to SmileMakers because Staples' legal counsel sent letters to both Gravett and OTC reminding them of those obligations.

4.    Despite the foregoing, since Gravett has joined OTC, OTC has begun selling licensed stickers identical to those SmileMakers sold during Gravett's employment. OTC has used the pricing, packaging and vendor information which SmileMakers developed to unfairly compete with SmileMakers. In doing so, Gravett and OTC have been using and exploiting SmileMakers' goodwill and confidential information for their benefit in violation of Gravett's non-competition, non-solicitation and confidentiality covenants.

## PARTIES

5.    Plaintiff Staples, Inc. is a Delaware Corporation with a principal place of business in Framingham, Massachusetts. Since June 2002, SmileMakers has been a Staples subsidiary.

6.    Plaintiff SmileMakers, Inc. is a South Carolina corporation with a principal place of business in Spartanburg, South Carolina. For over 25 years, SmileMakers has supplied stickers and inexpensive toys to pediatricians, teachers, dentists, and other professionals who interact with children. Sticker sales are roughly 36 % of SmileMakers' business. The Company distributes colorful catalogues and entices buyers to its web site identified as

- 2 -

www.SmileMakers.com. SmileMakers distinguishes itself by constantly developing new stickers and toys, and it invests significant capital in a team of researchers who stay current with popular children's trends and analyze packaging formats that are the most profitable. SmileMakers offers a wide range of products to customers around the globe.

7.      Defendant Brady Gravett is an individual residing at 14451 Erskine Street, Omaha, Nebraska, 68116.

8.      Defendant OTC is a Delaware corporation with a principal place of business at 4206 South 108th Street in Omaha, Nebraska. OTC advertises itself on its web site as a "direct marketer of value-priced novelties, toys, party supplies, crafts, gift items, home décor products and garden accents." Like SmileMakers, OTC uses colorful catalogues and web sites to offer a wide range of toys and novelty products to customers around the globe. Prior to Gravett's employment, OTC never sold licensed stickers.

## JURISDICTION AND VENUE

9.      The Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, since there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 (a)(3) because Defendants are subject to personal jurisdiction in Massachusetts.

## FACTUAL ALLEGATIONS

### A.      *Gravett's Employment with SmileMakers*

11.     SmileMakers hired Gravett in September 1998, even though he did not have any prior experience in the toy, novelty and sticker industry, and did not have a college degree.

12.     Upon information and belief, prior to joining SmileMakers, Gravett worked at Party City as a retail store manager. Party City later promoted him and he became Field

- 3 -

Assistant to the Vice-President of Operations. Gravett's main duties for Party City were setting up the merchandise in new Party City locations. He did not have any formal experience with merchandising toys, stickers and novelties before joining SmileMakers, and all of the knowledge, experience and customer contacts in the industry that Gravett had at the time he resigned from SmileMakers, he acquired while employed by SmileMakers.

13.    SmileMakers provided Gravett with extensive on-the-job training and reviewed his progress on a regular basis. During Gravett's initial training, SmileMakers introduced him to all of its vendor contacts and trained him regarding the direct mail business and SmileMakers' lucrative business-to-business markets. As part of his training, and to enable him to perform his job, SmileMakers also entrusted Gravett with confidential information, including trade secrets, such as: (i) the identity, requirements, creditworthiness, preferences and needs of specific customers, as well as certain customer information not publicly available; (ii) the identity of vendors, distribution channels, prices and availability of toys, novelties and stickers from specific suppliers; and (iii) pricing policies and information, financial information, merchandising, packaging, negotiating and sales strategies and other selected business information about SmileMakers not publicly available. For example, SmileMakers provided Gravett access through his computer at work to the Company's private database of confidential information concerning SmileMakers customers and suppliers, and knowledge of their buying and selling needs and practices. The database contained both Gravett's own vendor contact information he regularly used during his employment and the contact information maintained by other SmileMakers' employees. In order to perform his job, Gravett also was allowed to deal directly and repeatedly with SmileMakers' customers, vendors and suppliers.

14.    From approximately November 1998 through Gravett's resignation on April 16,

- 4 -

2004, SmileMakers further introduced Gravett to its customers and vendors and provided him

resources, using SmileMakers' goodwill, to develop customer, vendor and supplier relationships.

15.    At the time of his resignation in 2003, Gravett's annual salary was $49,557, plus

benefits, with the opportunity to earn a 10% bonus if the Company reached certain performance

targets.

16.    When SmileMakers hired Gravett in 1998, he executed a Confidentiality and

Non-Competition Agreement ("the 1998 Agreement") (A true and correct copy of the 1998 Non-

Compete Agreement is attached hereto as Exhibit 1 and incorporated by reference herein).  The

1998 Agreement had a confidentiality provision which provided in pertinent part:

### SECTION FOUR
### CONFIDENTIALITY

Employee agrees that all projections, estimates, lists, tax records, product
information, sales figures, budgets, forecasts, personnel, accounting, tax and other
financial records, and all other information concerning the business and affairs of the
Employer or any customer, supplier, creditor, or shareholder of the Employer shall be
secret and confidential.  Such confidential information shall be considered and kept as
private and privileged and will not be divulged to anyone except on authorization of the
Employer.  Further, upon termination of employment for any cause, Employee agrees
that he will not release any such information to anyone except upon written authority of
the Employer.  Employee agrees that he will surrender any confidential information he
may have to the Employer and will not retain copies or duplicates of said information.

17.    The 1998 Agreement also had a non-competition provision which provided in

pertinent part:

### SECTION FIVE
### COMPETITION WITH EMPLOYER

Inasmuch as the Employee is being employed in a confidential capacity and will
have complete knowledge of the affairs of the Employer and of the affairs of the
customers and suppliers of the Employer, the Employee agrees that:

(A)    Employee will not solicit, seek or accept any business similar to the Employer's business from any customer of the Employer with whom Employee had any dealings within a period of **one year prior to Employee's termination of employment** with Employer.

(B)    Employee will not become employed by any entity located in the continental United States or Canada that sells novelties, giveaways, or similar products to doctors, dentists, hospitals and related professional markets.

(C)    Employee will not on his own behalf or on behalf of another become employed by any entity that solicits business similar to the Employer's business from any customer of the Employer with whom the Employee had any dealings or contact within a period of one year prior to the Employee's termination of employment with Employer.

This section shall only be enforceable for a period of eighteen months directly after Employee leaves the employment of Employer for any reason. Employee hereby consents and agrees that any violation of any one or more of the provisions of this covenant shall permit the Employer to seek a restraining order to prevent Employee from violating said provisions. Said restraining order shall be in addition to any and all other rights available to Employer by reason of a breach of this agreement. In the event Employer seeks to enforce the provisions of this agreement and the Employer prevails, the Employer shall be entitled to recover from the Employee reasonable attorneys' fees and costs. (emphasis added.)

18.    In or about June 2002, Staples, Inc. bought Medical Arts Press, Inc. and its wholly owned subsidiary, SmileMakers, Inc. On January 27, 2003, Gravett signed a new "Non-Compete and Non-Solicitation Agreement" ("the 2003 Non-Compete Agreement") as well as a separate "Proprietary and Confidential Information Agreement" ("the 2003 Confidentiality Agreement") (True and correct copies of the 2003 Non-Compete Agreement and the 2003 Confidentiality Agreement are attached hereto as Exhibits 2 and 3 and incorporated by reference herein.) Those agreements, which superceded the 1998 Non-Compete Agreement between Gravett and SmileMakers, were in effect when Gravett resigned to work for OTC.

19.    In consideration for his execution of the 2003 Non-Compete Agreement and the 2003 Confidentiality Agreement, Staples granted Gravett 500 stock options in Staples stock on February 1, 2003.

20.    Paragraph 2 of the 2003 Non-Compete Agreement provides that:

For all periods beginning upon the date hereof and ending **one year from the date of termination of his/her employment** with the Company (the "Non-compete and Non-solicitation Period"), Executive shall not:

(a)    Directly or indirectly as owner, partner, joint venturer, stockholder, employee, broker, agent, principal, trustee, corporate officer, director, licensor, licensee, franchisee, or in any capacity whatsoever engage in, become financially interested in, be employed by or have any business or professional connection with any business that competes with the Company, including but not limited to any business engaged in, or which plans to engage in, the sale or distribution of office products or related services, including without limitation consumable office supplies, business machines and computers, office technology, telecommunication systems and services, and/or office furniture in any country where the Company or any of its subsidiaries is then engaged in such sales or distribution; provided, however, that Executive may own any securities of any corporation which is engaged in such business and is publicly owned and traded but in an amount not to exceed at any one time one percent of any class of stock or securities of such corporation. . . (emphasis added).

21.    Paragraph 7 of the 2003 Non-Compete Agreement stated that in the event Gravett breached the Agreement, the non-competition and non-solicitation periods would be tolled until the breach had been duly cured.

22.    The 2003 Non-Compete Agreement also states that during his employment, and for a one-year period after the termination of his employment with SmileMakers, Gravett could not:

(b)    Solicit, hire, offer employment to, or in any manner encourage employees of the Company to leave its employ. Executive further agrees that during such period he/she shall not directly or indirectly solicit, hire, or offer employment to any former employees who were employed by the Company at any time during Executive's final six months of employment with the Company.

23.    Finally, the 2003 Confidentiality Agreement contains provisions regarding non-disclosure of confidential information, including trade secrets. The confidentiality provisions prohibit Gravett from using or disclosing any of SmileMakers' confidential information, and other business information that SmileMakers disclosed to Gravett. Specifically, the 2003 Confidentiality Agreement states, in relevant part, as follows:

- 7 -

All Proprietary Information shall be the sole property of the Company and its assigns, and the Company and its assigns shall be the sole owner of all rights in connection therewith. I hereby assign to the Company any rights I may have or acquire in all Proprietary Information. At all times, **both during my employment by the Company and after its termination,** I will keep in confidence and trust, and not use to the detriment of the Company or for the benefit of myself or any third party, all Proprietary Information or anything relating to it without the written consent of the Company, except as may be necessary in the ordinary course of performing my duties as an employee of the Company.

24.     In both the 2003 Non-Compete Agreement and the 2003 Confidentiality Agreement, Gravett agreed that SmileMakers had the right to seek injunctive relief if he breached the covenants set forth therein and both Agreements provided that they were governed by the laws of the Commonwealth of Massachusetts. The 2003 Non-Compete Agreement also provided that Gravett would pay all of the costs (including attorney's fees) the Company incurs to enforce the Agreement.

25.     Gravett's duties and responsibilities as a Merchandiser for SmileMakers included, but were not limited to: (i) attending trade shows and vendor meetings, (ii) understanding customers and their needs, (iii) understanding kids market trends, (iv) recommending and sourcing new product lines, (v) setting price points on new products to meet margin objectives, (vi) setting up and coding products accurately to facilitate ordering and tracking, (vii) recommending quantity per unit and initial order quantity, (viii) providing to the creative department the necessary information for product advertising, and (ix) proofreading new products on catalog pages to verify the code, name, description, quantity and price.

26.     During his employment at SmileMakers, the Company encouraged him to establish relationships with vendors and customers and provided him with a Company credit card with which to do so. As such, Gravett established a relationship with SmileMakers' key licensed sticker vendor, Sandy Lion, and SmileMakers largest toy supplier, OTC, among others.

- 8 -

27.     During the course of Gravett's employment at SmileMakers, SmileMakers relied on a database, developed by the Company over many years, of active and creditworthy customers and suppliers, and their buying and selling needs and practices. For instance, SmileMakers has confidential information about the identity, contact information and buying habits of certain customers as well as the identity, contact information and cost flexibility of certain vendors. Finally, SmileMakers maintains information about the best selling children's toys, novelties and stickers, and it maintains as private certain information about product pricing and packaging techniques. This information is confidential, not publicly available, and critical to SmileMakers' business.

28.     Because SmileMakers' goodwill and confidential information are so important to its business, SmileMakers takes great effort to protect these assets. For example, in addition to the Company's specific policies and practices established to protect its confidential information, as consideration for being allowed to work in the lucrative position of Merchandiser, SmileMakers has for many years required all such employees to sign agreements that, among other things, prohibit them from competing with SmileMakers for a one-year period following the termination of their employment. These agreements also prohibit them from soliciting any SmileMakers customer or employee for the same period of time and from disclosing or using confidential information, including trade secrets.

29.     On or about April 16, 2004, Gravett submitted his resignation to Steve Brock, SmileMakers' Marketing Manager. When he resigned, Gravett told Brock that he was dissatisfied with "the direction the Company was headed in" and he was worried about his "future salary opportunities."

30.     Soon thereafter, Clift Garret, Director of Operations at SmileMakers, learned

- 9 -

from OTC that it had hired Gravett.

31.    As soon as SmileMakers learned that Gravett was going to work for OTC, Laurie Furse, SmileMakers' Marketing Director, and others escorted Gravett to his desk to get his belongings.  Furse then reminded Gravett of his obligations under the 2003 Non-Compete and 2003 Confidentiality Agreements, and Gravett assured Furse that he was going to work with OTC as a buyer.  He added that he was not going to be involved with marketing decisions because he understood his obligation not to divulge SmileMakers' trade secrets.  A few days later, Furse learned that he had been carrying large boxes out to his car prior to giving his resignation.

32.    At the time that Gravett left SmileMakers to work for OTC, OTC did not offer licensed stickers in its catalogue or on its web site.

33.    However, soon after he resigned from SmileMakers in April 2003, Gravett helped OTC develop a competing licensed sticker product, concealing his activities at OTC and the nature of his new job from SmileMakers.  Gravett and OTC both knew that his employment at OTC violated his non-competition obligations to SmileMakers.

34.    SmileMakers' success depends in large part on its goodwill with both its customers and suppliers and its confidential information about them and its product offerings.  The strong relationships that SmileMakers has developed with these accounts, as well as SmileMakers' reputation, allow it to obtain important confidential information from its customers and suppliers, and make certain sales.  In addition, SmileMakers has invested significant capital in developing packaging and marketing plans directed to certain customers based on their historical buying patterns.

35.    Gravett used SmileMakers' goodwill and confidential information in conducting

- 10 -

business with SmileMakers' customers and suppliers. In becoming employed by OTC, Gravett is able to exploit, and has exploited and used, that goodwill and confidential information for his own benefit and the benefit of OTC.

**B.**   *Gravett's Resignation from SmileMakers and Employment by OTC*

36.   Upon information and belief, while still employed by SmileMakers, Gravett was negotiating with OTC, a vendor and now a competitor of SmileMakers, on his own behalf to secure a job with OTC.

37.   On April 16, 2004, Gravett resigned his employment with SmileMakers to take a job with OTC, and upon information and belief he has been performing many of the same types of duties for OTC that he performed while at SmileMakers. Upon information and belief, Gravett has shared with OTC the confidential proprietary information which SmileMakers developed concerning its licensed sticker business.

38.   On or about April 30, 2004, Scott Plotnik, Senior Employment and Labor Counsel at Staples, wrote a letter to Gravett, (attached hereto as Exhibit 4) reiterating the terms of Gravett's 2003 Non-Compete and 2003 Confidentiality Agreements and explaining "by taking a position with OTC, [Gravett was] in violation of the Non-Compete and Non-Solicitation Agreement and Proprietary and Confidential Information Agreement [he] signed while at SmileMakers...."

39.   In response, Gravett sent a letter (attached hereto as Exhibit 5) stating "I can assure you that my position at OTC will not violate the terms of any agreement I have with Staples, Inc. I can also assure you that I have no intention of soliciting SmileMakers' employees for employment elsewhere, nor do I have any intention of using or divulging proprietary information of SmileMakers."

40.   Once again, on May 17, 2004, Cindy Westervelt, Staples' Employment and

Litigation Counsel, wrote a letter to Stephen Frary, President of OTC, (attached hereto as Exhibit 6) reiterating that Gravett had non-compete and non-disclosure obligations to SmileMakers and warning "we are concerned that by hiring Mr. Gravett, Oriental Trading Company intends to obtain access to SmileMakers' proprietary information in order to gain an unfair business advantage in the market." Westervelt added "SmileMakers simply will not tolerate such unlawful tactics and is prepared to pursue every available remedy to protect its rights under these agreements."

41.     In response, Robert R. Siffrin, OTC's General Counsel, wrote a letter dated May 21, 2004 (attached hereto as Exhibit 7) stating, inter alia, "I can assure you that Oriental Trading Company respects the intellectual property rights and contractual rights of others and has no intention or desire to obtain any confidential or proprietary information of Staples or SmileMakers or to intefere in any way with Mr. Gravett's contractual relationship with Staples."

42.     Despite the foregoing, since leaving SmileMakers, Gravett and other OTC employees have used and exploited Gravett's knowledge of SmileMakers' confidential information and SmileMakers' goodwill to develop and merchandise a new line of licensed stickers which directly competes with Smilermakers' own sticker line. In helping OTC develop this new offering, Gravett has used and disclosed confidential information, including without limitation, SmileMakers' information on the identity, creditworthiness, buying preferences and needs of specific SmileMakers' customers; and/or the identity, channels and pricing information of SmileMakers' suppliers; and/or information regarding customer preferences, merchandising, pricing and packaging.

43.     In inducing Gravett to leave SmileMakers to become employed by OTC, OTC knew of Gravett's non-competition, non-solicitation and confidentiality obligations to

- 12 -

SmileMakers, and knew that his employment with OTC would violate these restrictive covenants to the detriment of SmileMakers.

## C.    *Irreparable Harm and Balancing of the Equities*

44.    SmileMakers will suffer immediate, substantial and irreparable harm if Gravett and OTC are not enjoined from violating the restrictive covenants contained in Gravett's 2003 Non-Compete Agreement and 2003 Confidentiality Agreement by using SmileMakers' goodwill and confidential information for the benefit of Gravett and OTC. If Gravett and OTC continue to compete unfairly and misappropriate SmileMakers' trade secrets and confidential information, the confidentiality of such information will be lost forever.

45.    The harm which SmileMakers will suffer as a result of this misappropriation, far outweighs the prejudice which OTC and Gravett will suffer if they are forced to abandon the licensed sticker business and terminate Gravett for the duration of his Non-Compete Agreement.

### COUNT I
### (Breach of Contract Against Gravett)

46.    SmileMakers repeats and realleges Paragraphs 1 – 45 above, and incorporates them as if fully set forth herein.

47.    By the acts described above, Gravett has breached the provisions of his 2003 Non-Compete Agreement and his 2003 Confidentiality Agreement in at least the following ways: (a) becoming employed by OTC, a direct competitor of SmileMakers, and competing with SmileMakers in violation of his non-competition covenant; (b) using and disclosing SmileMakers' confidential information, including, without limitation, the identity, creditworthiness, buying needs and preferences of specific SmileMakers customers, as well as the identity, selling needs, distribution channels and pricing information of SmileMakers suppliers, in violation of his confidentiality covenant; and (c) using and disclosing SmileMakers'

- 13 -

confidential information, including, without limitation, information regarding packaging,

merchandising and customer trends in order to help OTC develop a licensed sticker offering.

48.    As a direct and proximate result of Gravett's actions described above,

SmileMakers has suffered monetary damages in an amount to be proven at trial and has suffered

substantial and irreparable injury and is threatened with further substantial and irreparable injury

due to the loss and use by Gravett and OTC of its trade secrets, confidential customer

information and customers' goodwill, for which there is no adequate remedy at law to

compensate SmileMakers.  Such damages include, without limitation, SmileMakers' lost profits

and Gravett's and OTC's wrongful profits derived from such unauthorized disclosure and use.

## COUNT II
### (Breach of Loyalty and Fiduciary Duty Against Gravett)

49.    SmileMakers repeats and realleges paragraphs 1 - 45 above, and incorporates

them as if fully set forth herein.

50.    Gravett occupied a position of trust and confidence with SmileMakers and owed

SmileMakers a duty of loyalty and a duty to protect SmileMakers' confidential information,

goodwill and interests.

51.    Gravett has violated his duty of loyalty and his fiduciary duty to SmileMakers by:

(a) preparing to compete with SmileMakers and thereby violate his non-competition covenant in

negotiating, during his employment with SmileMakers, to become employed by OTC, a direct

competitor of SmileMakers; (b) subsequently becoming employed by OTC and using

SmileMakers' confidential information and goodwill to compete with SmileMakers; (c) using

SmileMakers' confidential information and goodwill to help OTC develop a licensed sticker

offering; and (d) otherwise misappropriating and using for his and OTC's benefit SmileMakers'

confidential information and goodwill.

- 14 -

52.     As a result of Gravett's wrongdoing, SmileMakers has suffered monetary

damages in an amount to be proven at trial and has suffered substantial and irreparable injury and

is threatened with further substantial and irreparable injury due to the loss and use by Gravett and

OTC of its trade secrets, confidential customer information and customers' goodwill, for which

there is no adequate remedy at law to compensate SmileMakers.  Such damages include, without

limitation, SmileMakers' lost profits and Gravett's and OTC's wrongful profits derived from

such unauthorized disclosure and use.

### COUNT III
### (Misappropriation of Trade Secrets and/or
### Confidential Business Information Against Gravett and OTC)

53.     SmileMakers repeats and realleges paragraphs 1 - 45 above, and incorporates

them as if fully set forth herein.

54.     By virtue of his employment at SmileMakers, Gravett possesses trade secrets and

confidential and proprietary business information of SmileMakers, described above, including

without limitation, SmileMakers' pricing and financial information, merchandising and

negotiating strategies, information on the identity, creditworthiness, buying needs and

preferences of specific SmileMakers' customers, as well as the identity, selling needs,

distribution channels and pricing information of SmileMakers' suppliers.

55.     SmileMakers took reasonable steps to preserve the secrecy of this confidential

business information and trade secrets.

56.     Gravett and OTC misappropriated, exploited and misused SmileMakers' trade

secrets and confidential and proprietary information and its customers' goodwill to benefit

Gravett and OTC, in their own self interest and to compete unfairly against SmileMakers.

57.     The disclosure and use of such information by Gravett and OTC constitutes a

misappropriation of trade secrets and confidential and proprietary business information in

- 15 -

violation of M.G.L. c. 93, §§ 42 and 42A, and common law.

58.    As a result of Gravett's and OTC's wrongdoings, SmileMakers has suffered monetary damages in an amount to be proven at trial and has suffered substantial and irreparable injury and is threatened with further substantial and irreparable injury due to the loss and use by Gravett and OTC of its trade secrets, confidential customer information and customers' goodwill, for which there is no adequate remedy at law to compensate SmileMakers. Such damages include, without limitation, SmileMakers' lost profits and Gravett's and OTC's wrongful profits derived from such unauthorized disclosure and use.

59.    By reason of the acts alleged herein, SmileMakers has been injured in an amount to be determined at trial, and since its remedy at law is inadequate, requires injunctive relief to prevent the continued misappropriation, loss and disclosure of SmileMakers' trade secrets and confidential information.

### COUNT IV
### (Tortious Interference With Contract Against OTC)

60.    SmileMakers repeats and realleges Paragraphs 1 – 45 above, and incorporates them as if fully set forth herein.

61.    As described above, through Gravett's 2003 Non-Competition and Non-Solicitation Agreement and his 2003 Proprietary and Confidential Information Agreement, SmileMakers had valid and binding contracts with Gravett.

62.    By the acts described above, OTC knew that Gravett had valid and enforceable Non-Competition and Confidentiality Agreements with SmileMakers and that his employment with OTC would violate the restrictive covenants contained therein.

63.    By the acts described above, OTC intended for Gravett to breach the restrictive covenants contained in his Non-Competition and Confidentiality Agreements with SmileMakers

and/or OTC knew or should have known that Gravett's breach of these contracts was certain or substantially certain to result from OTC's actions.

64.    By the acts described above, OTC had an improper motive and means in interfering with SmileMakers' Non-Competition and Confidentiality Agreements with Gravett without lawful justification or legitimate reason for its interference with these contractual relationships.

65.    As a direct and proximate result of OTC's actions described above, OTC induced Gravett to breach his Non-Competition Agreement with SmileMakers.

66.    As a direct and proximate result of OTC's actions described above, SmileMakers has suffered and continues to suffer irreparable harm and monetary damages in an amount to be proven at trial.

## COUNT V
### (Tortious Interference With Advantageous Business Relations Against Gravett and OTC)

67.    SmileMakers repeats and realleges Paragraphs 1 – 45 above, and incorporates them as if fully set forth herein.

68.    As described above, SmileMakers has advantageous business relationships with its customers and suppliers.  Gravett and OTC were fully aware of these relationships.

69.    By hiring Gravett in order to obtain SmileMakers' confidential and proprietary information and trade secrets in Gravett's possession, and by knowingly using and exploiting this confidential information and SmileMakers' goodwill in order to damage SmileMakers' relations with its customers and suppliers, OTC and Gravett knowingly and intentionally interfered with SmileMakers' advantageous relations with its customers and suppliers without legal justification for the purpose of inducing present and prospective customers of SmileMakers to withhold their patronage from SmileMakers.

- 17 -

70.     By the acts described above, OTC and Gravett intended for present and prospective customers of SmileMakers to withhold their patronage from SmileMakers, and they knew or should have known that the withholding of patronage by SmileMakers' present and prospective customers was certain or substantially certain to result from their actions.

71.     By the acts described above, OTC and Gravett had an improper motive and means in interfering with SmileMakers' advantageous business relations with its present and prospective customers and suppliers without lawful justification or legitimate reason for this interference with these advantageous business relationships.

72.     As a direct and proximate result of OTC's and Gravett's actions described above, SmileMakers' present and prospective customers and suppliers have been or may be induced to withhold their patronage from SmileMakers.

73.     As a direct and proximate result of OTC's and Gravett's actions described above, SmileMakers has suffered and continues to suffer irreparable harm and monetary damages in an amount to be proven at trial.

## COUNT VI
### (Violation of M.G.L. c. 93A, §§ 2 and 11 Against OTC)

74.     SmileMakers repeats and realleges Paragraphs 1 – 45 above, and incorporates them as if fully set forth herein.

75.     SmileMakers is a "person" and engages in "trade or commerce" within the meaning of Mass. Gen. Laws c. 93A, § 1.  OTC is a "person" and engages in "trade or commerce" within the meaning of Mass. Gen. Laws c. 93A, § 1.

76.     OTC's activities as set forth above constitute willful and knowing violations of M.G.L. c. 93A, §§ 2 and 11.  Said violations include the misappropriation, exploitation, and misuse of SmileMakers' confidential and proprietary business information and trade secrets,

- 18 -

including without limitation, customer and supplier information and SmileMakers' goodwill, to benefit OTC, who is currently using this information to compete unfairly against SmileMakers. Said violations also include OTC's intentional interference with SmileMakers' contractual relations with Gravett and with SmileMakers' advantageous business relations with its customers and suppliers.

77.    As a result of OTC's violations of M.G.L. c. 93A, §§ 2 and 11, SmileMakers will suffer immediate and irreparable harm, unless OTC is enjoined from its unlawful activities.

## COUNT VII
### (Violation of M.G.L. c. 93A, §§ 2 and 11 Against Gravett)

78.    SmileMakers repeats and realleges Paragraphs 1 – 45 above, and incorporates them as if fully set forth herein.

79.    SmileMakers is a "person" and engages in "trade or commerce" within the meaning of Mass. Gen. Laws c. 93A, § 1.

80.    With respect to Gravett's activities and breaches of his fiduciary and/or loyalty duties to SmileMakers during his employment, in planning to compete unfairly with SmileMakers after his employment with the Company, Gravett is a "person" and engages in "trade or commerce" within the meaning of Mass. Gen. Laws c. 93A, § 1.

81.    Gravett's activities as set forth above constitute willful and knowing violations of M.G.L. c. 93A, §§ 2 and 11.  Said violations include Gravett's activities and breaches of his duty of loyalty and fiduciary duty to SmileMakers, during his employment with SmileMakers, in planning to compete unfairly with SmileMakers after his employment with the Company, to benefit himself and OTC.

82.    As a result of Gravett's violations of M.G.L. c. 93A, §§ 2 and 11, SmileMakers will suffer immediate and irreparable harm, unless Gravett is enjoined from his unlawful

BOI 15695730.1

activities.

## REQUESTED RELIEF

**WHEREFORE,** Staples and SmileMakers pray that this Court:

A.    Enter a preliminary injunction and, after trial, enter a permanent injunction,

ordering Gravett:

(1)    not to work for or render services to OTC or any other competitor of SmileMakers located in the United States or Canada, nor directly or indirectly engage in any business which is or may be competitive with SmileMakers, for a period of twelve (12) months after the date Gravett stops breaching his non-competition and/or non-solicitation obligations to SmileMakers in accordance with the terms of his covenant not to compete contained in his Non-Competition Agreement;

(2)    not to directly or indirectly solicit, entice or induce any customer of SmileMakers to become a client, customer, distributor or reseller of any other person, firm or corporation with respect to products and/or services sold or under development by SmileMakers or competitive with products and/or services sold or under development by SmileMakers, or to cease doing business with SmileMakers, for a period of twelve (12) months after the date Gravett stops breaching his non-competition and/or non-solicitation obligations to SmileMakers in accordance with Gravett's non-solicitation covenant contained in his 2003 Non-Compete Agreement; and

(3)    not to use, distribute, disclose or disseminate any of SmileMakers' proprietary or confidential information, technical data, trade secrets or know-how, including, but not limited to, research, product or business plans, products, services, projects, proposals, customer lists and customers (including, but not limited to, Sandy Lion and any other customers and suppliers of the Company on whom Gravett called or with whom he became acquainted during the term of his employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, marketing, distribution and sales methods and systems, sales and profit figures, finances and other business information disclosed to Gravett by the Company, either directly or indirectly in writing, orally or by drawings or inspection of documents or other tangible property, and ordering Gravett not to use, copy or otherwise record the information contained in such confidential material, in accordance with Gravett's confidentiality covenant contained in his 2003 Confidentiality Agreement;

B.    Enter a preliminary injunction and, after trial, enter a permanent injunction,

ordering OTC:

(1)    not to employ Gravett in any manner for a period of twelve (12) months after the date Gravett stops breaching his non-competition and/or non-solicitation obligations to SmileMakers in accordance with the terms of his covenant not to compete contained in his 2003 Non-Compete Agreement;

(2)    not to employ any other SmileMakers employee or former employee within a period of one year from the termination of their employment with SmileMakers;

(3)    not to directly or indirectly solicit, entice or induce any customer of SmileMakers that was not also an active customer of OTC as of April 16, 2004 to become a client, customer, distributor or reseller of OTC, or to cease doing business with SmileMakers, for a period of twelve (12) months after the date Gravett stops breaching his non-competition and/or non-solicitation obligations to SmileMakers;

(4)    not to sell licensed stickers for a period of twelve months from the date of this order;

(5)    not to use any confidential or proprietary information, including trade secrets, or goodwill of SmileMakers to directly or indirectly solicit, entice or induce any customer of SmileMakers to become a client, customer, distributor or reseller of OTC with respect to products and/or services sold or under development by SmileMakers or competitive with products and/or services sold or under development by SmileMakers, or to cease doing business with SmileMakers, in accordance with Gravett's 2003 Confidentialty Agreement; and

(6)    not to use, distribute, disclose or disseminate any of SmileMakers' proprietary or confidential information, technical data, trade secrets or know-how, including, but not limited to, research, product or business plans, merchandising plans, products, services, projects, proposals, customer lists and customers (including, but not limited to, customers or suppliers of SmileMakers on whom Gravett called or with whom he became acquainted during the term of his employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, marketing, distribution and sales methods and systems, sales and profit figures, finances and other business information disclosed to OTC by Gravett, either directly or indirectly in writing, orally or by drawings or inspection of documents or other tangible property, and ordering OTC not to use, copy or otherwise record the information contained in such confidential material;

C.    Enter judgment in Plaintiff's favor and against Gravett and OTC jointly and severally, where applicable, for all damages that may be calculated at trial suffered by SmileMakers as a result of Gravett's and/or OTC's misconduct, plus interest;

D.    Treble damages as provided by M.G.L. c. 93A, §§ 2 and 11;

E.    Attorneys' fees and costs as allowed by law; and

F.    Grant such other and further relief as may be just and equitable.

Respectfully submitted,

STAPLES, INC. and SmileMakers
By their attorneys,

Lynn A. Kappelman (BBO No. 642017)
Jennifer A. Serafyn (BBO No. 653739)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
(617) 946-4800

- 22 -

04/22/2004 13:20    8645859707                    SM                                        PAGE 02

# SMILEMAKERS, INC.
## CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

This is an Agreement made by and between Smilemakers, Inc., a South Carolina corporation having its principal place of business in Spartanburg, South Carolina (herein called the "Employer" or the "Company"), and the undersigned individual (herein called the "Employee").

## RECITALS

A.    The Employer is engaged in a highly competitive business, selling novelties and promotional items to the professional market, primarily doctors and dentists.

B.    The Employer's business is in all States of the United States as well as other parts of North America and elsewhere. The Employer has devoted substantial time and money to establishing general know how, including supplier and customer contacts.

C.    The Employee is presently employed or is about to become employed by the Employer. The Employee had no knowledge of or experience in the Employer's business prior to becoming associated with the Employer and its subsidiaries.

D.    It is mutually advantageous for both parties to enter into a written agreement protecting the Employer's business and the jobs of the Employer's business.

## SECTION ONE
## EMPLOYMENT

Employer hereby employs, engages, or continues to employ Employee, and Employee hereby accepts and agrees to such hiring, subject to the general supervision and pursuant to the orders, advice and direction of the Employer. In addition, Employer gives Employee additional consideration of $100, of which Employee acknowledges receipt, to enter into this agreement.

## SECTION TWO
## BEST EFFORTS OF EMPLOYEE

Employee agrees that he will at all times faithfully, industriously, and to the best of his ability, experience and talents, perform all of the duties that may be required of him by Employer. Employee shall devote all of his time, attention, and knowledge to said employment, and agrees not to be interested directly or indirectly in any other business or calling in any manner without the consent of Employer. Nothing herein shall be deemed to prevent Employee from investing surplus funds in investments not in competition with Employer.

#241564

## SECTION THREE
## TERM OF EMPLOYMENT

This employment may be terminated by either party, with or without cause, on fourteen (14) days written notice. Upon termination, Employer reserves the right to pay Employee fourteen (14) days severance in lieu of providing employment for a fourteen (14) day period. Either party, on the occasion of breach by the other, may immediately terminate this employment.

## SECTION FOUR
## CONFIDENTIALITY

Employee agrees that all projections, estimates, lists, tax records, product information, sales figures, budgets, forecasts, personnel, accounting, tax and other financial records, and all other information concerning the business and affairs of the Employer or any customer, supplier, creditor, or shareholder of the Employer shall be secret and confidential. Such confidential information shall be considered and kept as private and privileged and will not be divulged to anyone except on authorization of the Employer. Further, upon termination of employment for any cause, Employee agrees that he will not release any such information to anyone except upon written authority of the Employer. Employee agrees that he will surrender any confidential information he may have to the Employer and will not retain copies or duplicates of said information.

## SECTION FIVE
## COMPETITION WITH EMPLOYER

Inasmuch as the Employee is being employed in a confidential capacity and will have complete knowledge of the affairs of the Employer and of the affairs of the customers and suppliers of the Employer, the Employee agrees that:

(A)  Employee will not solicit, seek or accept any business similar to the Employer's business from any customer of the Employer with whom Employee had any dealings within a period of one year prior to Employee's termination of employment with Employer.

(B)  Employee will not become employed by any entity located in the continental United States or Canada that sells novelties, giveaways, or similar products to doctors, dentists, hospitals and related professional markets.

(C)  Employee will not on his own behalf or on behalf of another become employed by any entity that solicits business similar to the Employer's business from any customer of the Employer with whom the Employee had any dealings or contact within a period of one year prior to the Employee's termination of employment with Employer.

This section shall only be enforceable for a period of eighteen months directly after Employee leaves the employment of Employer for any reason. Employee hereby consents and agrees that any violation of any one or more of the provisions of this covenant shall permit the Employer to seek a restraining order to prevent Employee from violating said provisions. Said restraining order shall be in addition to any and all other rights available to Employer by reason of a breach of this agreement. In the event Employer seeks to enforce the provisions of this agreement and the Employer prevails, the Employer shall be entitled to recover from the Employee reasonable attorneys' fees and costs.

The parties acknowledge that the provisions of this covenant are reasonable for the protection of the business and affairs of the Employer, that the Employer would not provide employment to the Employee were the Employee not willing to provide this covenant, and that the Employee would not provide this covenant to the Employer were he not employed by the Employer. The Employee acknowledges that this covenant limits his ability to deal with only a narrow market and, accordingly, that the Employee's ability to find other gainful employment subsequent to the end of his employment with the Employer shall not be affected significantly by this covenant.

## SECTION SIX
## SEVERABILITY

If any provision of this agreement shall be determined to be void by any Court then such determination shall not affect any other provision, paragraph or part of this agreement, all of which shall remain in full force and effect. It is the intent of the parties that the provisions of this agreement be enforced, and if any are deemed unenforceable then the parties hereto have agreed that such unenforceable provision or provisions are deemed modified to the extent necessary to obtain maximum enforceability and conformance with the laws that may govern this agreement.

## SECTION SEVEN
## ASSIGNMENT BY EMPLOYER

Employer may assign all rights and obligations hereunder to any successor employer.

## SECTION EIGHT
## WAIVER

Waiver by the Employer of any breach of this agreement shall not be effective unless in writing and no such waiver shall be construed as a waiver of another breach.

#241564                           3

04/22/2004  13:28  8645859707                SM                        PAGE  05

## SECTION NINE
### GOVERNING LAW

This agreement shall be governed by the laws of South Carolina.

## SECTION TEN
### ENTIRETY OF AGREEMENT

This agreement shall represent the entire agreement between the parties concerning the subject matter hereof.  No modification of this agreement shall be effective unless in writing and signed by both parties.

IN WITNESS WHEREOF, the parties have executed this agreement this __25__ day of __Sept_____, 199_98_ .

SMILEMAKERS, INC.

By: _Laurie S Fuse_____

Its: _Marketing Director_

the Employer

_Brady A. Gravett_
(Signature of Employee)

_Brady A. Gravett_
(Print Name of Employee)

the Employee

Signed in the presence of and acknowledged by Employee to be a disinterested witness:

_Kell Gray_____

#241564

4

## NON-COMPETE AND NON-SOLICITATION AGREEMENT *
### (Required for all associates in levels 34-39)

This AGREEMENT is dated as of __1/27/2003__ by and between STAPLES, INC., a Delaware Corporation having offices at 500 Staples Drive, Framingham, Massachusetts 01702 (the "Company," which term includes any affiliates and subsidiaries), and _Brady A. Gravett_ ("Executive"), SSN#: __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__ .

### WITNESSETH:

WHEREAS the Company operates in the highly competitive, diversified office products market and competes across delivery channels with various types of businesses which presently include but are not limited to office supply chains, mass merchants, warehouse clubs, computer and electronic superstores, mail order firms, contract stationer businesses, electronic commerce distributors, and telecommunications providers;

WHEREAS, Executive is an officer and stock option-holder of the Company;

WHEREAS, such relationship creates a relationship of confidence and trust between the parties;

WHEREAS, the Company in reliance on this Agreement has and will entrust Executive with information, knowledge, and know-how which would be detrimental to Company if Executive were to provide services to, or otherwise participate in the operation of, a competitor of the Company;

WHEREAS, the conduct of the Company's business entails the disclosure of confidential information and trade secrets to its employees and by virtue of the services which Executive will render or intends to render pursuant to this Agreement, Executive will become privy, solely through his/her relationship with the Company and its employees to confidential business information of the Company, including but not limited to financial information, marketing plans and techniques, strategies, forecasts, operations structures and methods, pricing policies and information, customer lists and information, vendor programs and other proprietary, private, confidential business matters.

WHEREAS, the Company entrusts Executive with maintaining contacts, business relationships and goodwill with Staples' customers.

NOW, THEREFORE, in consideration of the promises and mutual covenants and agreements herein contained, the parties hereto agree as follows:

1.  In addition to compensation paid to Executive by the Company from time to time and the issuance of any future grants of stock options as may be granted at the discretion of the Board of Directors, the Company shall pay to Executive the sum of One Dollar ($1.00), receipt of which is hereby acknowledged, in exchange for Executive's promises as set forth herein. Executive

---

* 1 year version – Levels 34 –39 except GMs
  Revised 6/99 (nys/masters/agreements34-39noncomp.doc)

acknowledges that a grant of stock options has value sufficient to constitute consideration by itself for this Agreement regardless of whether Executive actually profits from the grant.

2.     For all periods beginning upon the date hereof and ending one year from the date of termination of his/her employment with the Company (the "Non-compete and Non-solicitation Period"), Executive shall not:

(a) Directly or indirectly as owner, partner, joint venturer, stockholder, employee, broker, agent, principal, trustee, corporate officer, director, licensor, licensee, franchisee, or in any capacity whatsoever engage in, become financially interested in, be employed by or have any business or professional connection with any business that competes with the Company, including but not limited to any business engaged in, or which plans to engage in, the sale or distribution of office products or related services, including without limitation consumable office supplies, business machines and computers, office technology, telecommunication systems and services, and/or office furniture in any country where the Company or any of its subsidiaries is then engaged in such sales or distribution; provided, however, that Executive may own any securities of any corporation which is engaged in such business and is publicly owned and traded but in an amount not to exceed at any one time one percent of any class of stock or securities of such corporation. Notwithstanding anything to the contrary herein, in the event that Executive's employment is terminated involuntarily other than for "Cause," the Non-compete Period set forth in this Paragraph 2(a) shall be modified as follows. The modified period shall be equal to the duration of any period during which Executive is entitled to severance pay in accordance with Company policy or any applicable Severance Benefits Agreement. For the purpose of this Paragraph, "Cause" shall be defined as Executive's willful and continued failure to substantially perform his or her job duties, Executive's violation of Staples' Business Conduct & Ethics Policy, Executive's breach of either this Agreement or the Proprietary and Confidential Information Agreement, or Executive's willful misconduct.

(b) Solicit, hire, offer employment to, or in any manner encourage employees of the Company to leave its employ. Executive further agrees that during such period he/she shall not directly or indirectly solicit, hire, or offer employment to any former employees who were employed by the Company at any time during Executive's final six months of employment with the Company.

3.     In the event that the Executive believes that employment otherwise in violation of this Agreement would not harm the Company's legitimate business interests, Executive may request Staples to waive the restrictions contained in this Agreement. Any such request shall be made in writing to the Executive Vice President, Human Resources at the Company and shall identify the business with which the Executive seeks to associate and describe the duties that the Executive seeks to perform. The Company has the sole discretion whether to grant such a waiver and no waiver of any restrictions under this Agreement shall be effective unless in writing and signed by the President or CEO of the Company.

4.     In the event that any one or more of the terms contained in subparagraphs (a) or (b) of Paragraph 2 for any reason becomes invalid, illegal, or unenforceable, such invalidity, illegality or unenforceability shall not affect any other terms herein, but such terms shall be deemed deleted and such deletion shall not affect the validity of the other terms of Paragraph 2. In addition, if any one or more of the terms contained in subparagraphs (a) or (b) of Paragraph 2 shall for any reason be held to be excessively broad with regard to time, duration, geographic scope or activity such terms shall be construed in a manner to enable them to be enforced to the extent compatible with applicable law.

04/22/2004  13:20    8645859787

5.      The parties agree that failure to comply with subparagraphs (a) or (b) of Paragraph 2 cannot be reasonably or adequately compensated in damages in an action at law and breach of these provisions of this Agreement will cause the Company irreparable harm. Therefore, in addition to the other remedies which may be available to it, in law or in equity, the Company shall be entitled to injunctive relief without bond or other security with respect to the breach of subparagraphs (a) or (b) of Paragraph 2.

6.      If Executive breaches any of the covenants set forth in this Agreement, Executive agrees to pay all costs (including attorney's fees) incurred by the Company in establishing that breach and in otherwise enforcing any of the covenants or provisions of this Agreement.

7.      In the event that Executive breaches any of the provisions of Paragraph 2 of this Agreement, the Non-compete and Non-solicitation period shall be tolled until such breach has been duly cured. If, during the Non-compete and Non-solicitation Period, Executive has, or intends to have, any business or professional connection with any business that competes with the Company as set forth in subparagraph (a) of Paragraph 2, Executive shall provide the Company with thirty days prior written notice of the name, address, and telephone number of such company or business, regardless of its location. Written notice under this paragraph shall be delivered to the Company's Executive Vice President of Human Resources via personal delivery, certified mail, or other equally reliable means.

8.      The termination of Executive's employment with the Company shall not affect the enforceability of this Agreement. Nothing in this Agreement shall be deemed to imply any obligation of continued employment of Executive by the Company which employment shall be "at will" unless otherwise specifically agreed in writing.

9.      This Agreement shall be binding upon the legal representatives, heirs, successors and assigns of the parties hereto. It may not be changed orally, but only by a writing signed by the party against whom enforcement of any such change is sought. It is agreed that a waiver by either party of a breach of any provisions of this Agreement shall not operate or be construed as a waiver of any subsequent breach by the same party. This Agreement shall be governed by the laws of the Commonwealth of Massachusetts, and Executive agrees that any claims or causes of action which arise out of this Agreement shall be instituted and litigated only in, and Executive voluntarily submits to the jurisdiction over his or her person by, a court of competent jurisdiction located within the Commonwealth of Massachusetts.

STAPLES, INC.                              EXECUTIVE:


By: _____              Signature: _Brady A. Gravett_
Its: Executive Vice President,
      Human Resources                     Please print your name here:

                                          _Brady A. Gravett_

                                          Social Security Number:
                                          _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_

3

**STAPLES, INC.**
**PROPRIETARY AND CONFIDENTIAL INFORMATION AGREEMENT**
*(Required for all associates in levels 34-50)*


I, _Brady M. Gravett_ (SSN# _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_) recognize that Staples, Inc., a Delaware corporation (the "Company", which term includes any affiliates and subsidiaries thereof), is engaged in the distribution and sale of office products, services, supplies, equipment, and furniture.

I understand that:

A.    As part of my employment by the Company I am expected to make new contributions of value to the Company.

B.    My employment creates a relationship of confidence and trust between me and the Company with respect to any information applicable to the business of the Company and applicable to the business of any client or customer of the Company, which may be made known to me by the Company or by any client or customer of the Company, or learned by me during the period of my employment.

C.    The Company possesses and will continue to possess information, goodwill and other assets that have been created or developed, or have otherwise become known to the Company (including, without limitation, information, goodwill, and other assets created, developed or made known by or to me during the period of or arising out of my employment by the Company), which information, goodwill and other assets have commercial value in the business in which the Company is engaged.   All of the aforementioned information is hereinafter called "Proprietary Information."  By way of illustration, but not limitation, Proprietary Information includes trade secrets, financial information, marketing plans and techniques, strategies, forecasts, operations structures and methods, pricing policies and information, customer lists, relationships, goodwill, and other customer information.

In consideration of my employment and the compensation and benefits received by me from the Company from time to time, I hereby agree as follows:

1.    All Proprietary Information shall be the sole property of the Company and its assigns, and the Company and its assigns shall be the sole owner of all rights in connection therewith.  I hereby assign to the Company any rights I may have or acquire in all Proprietary Information.  At all times, both during my employment by the Company and after its termination, I will keep in confidence and trust, and not use to the detriment of the Company or for the benefit of myself or any third party, all Proprietary Information or anything relating to it without the written consent of the Company, except as may be necessary in the ordinary course of performing my duties as an employee of the Company.

2.    In the event of the termination of my employment by me or by the Company for any reason, I will deliver to the Company all documents and information of any nature pertaining to my work with the Company and I will not take with me any documents or information of any description or any reproduction thereof containing or pertaining to any Proprietary Information.

04/22/2004   13:28   0045033                              SM                                    PAGE   19

3.     Prior to entering the employ of the Company I have terminated employment with one or more prior employers.  I represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence Proprietary Information acquired by me or in trust prior to my employment by the Company.  I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict herewith.

4.     I also understand that, in my employment with the Company, I am not to breach any written obligations of confidentiality that I have to former employers, and I agree that I shall fulfill all such obligations during my employment with the Company.  I agree to indemnify and hold harmless the Company, its directors, officers and employees against any liabilities and expenses, including amounts paid in settlement, incurred by any of them in connection with any claim by any of my prior employers that the termination of my employment with such employer, my employment by the Company, or use of any skills and knowledge by the Company is a violation of contract or law.

5.     I agree that in addition to any other rights and remedies available to the Company for any breach by me of my obligations hereunder, the Company shall be entitled to enforcement of my obligations hereunder by court injunction.  If any provisions of this Agreement shall be declared invalid, illegal or unenforceable, such provision shall be severed and all remaining provisions shall continue in full force and effect.

6.     This agreement shall be effective as of the first day of employment by the Company.  This agreement shall be binding upon me, my heirs, executors, assigns, legal representatives and administrators and shall inure to the benefit of the Company, its successors and assigns.  This Agreement shall be governed in all respects by the laws of the Commonwealth of Massachusetts.

Dated: _1/23/03_

Signature: _Brady A Gravitt_

Please print your name here:

_Brady A Gravett_

Social Security Number:

_250·59·8551_



Staples®
500 Staples Drive
Framingham, MA 01702

Dial Direct: 508-253-7875
Fax: 508-253-1555
E-mail: scot.plotnick@staples.com

April 30, 2004

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL**

Mr. Brady Gravett
7 Merrifield Drive
Greenville, SC 29615

Dear Mr. Gravett:

We understand that you resigned from SmileMakers on April 16, 2004, in order to take a position with Oriental Trading Company, a SmileMakers competitor.

Please understand that by taking a position with Oriental Trading Company, you are in violation of the Non-Compete and Non-Solicitation Agreement and Proprietary and Confidential Information Agreement you signed while at SmileMakers. Copies of these Agreements are enclosed.

We take your contractual promises very seriously and are prepared to take appropriate steps to protect our interests. Please provide me with written assurance that your position at Oriental Trading Company does not in any way interfere with Staples' or SmileMakers' business interests. I would appreciate your response by May 7, 2004.

Please be aware that for a period of one year from the date of your departure from SmileMakers, you are prohibited from soliciting, hiring, or offering employment to any Staples or SmileMakers employees, or in any manner encouraging Staples or SmileMakers employees to leave. You also may not directly or indirectly solicit, hire, or offer employment to any former Staples or SmileMakers employees who were employed at any time during your final six months of employment.

In addition, as indicated in your Non-Compete and Non-Solicitation and Proprietary and Confidential Information Agreements, as an employee of SmileMakers you were entrusted with proprietary information about SmileMakers and about its customers. As a Merchandiser, you had access to a large body of data about SmileMakers' customers. This information is proprietary to SmileMakers and treated by SmileMakers as confidential. You may not divulge any proprietary information you obtained or had access to during your employment with SmileMakers. SmileMakers will carefully monitor this information and will pursue all remedies available to it at law or in equity in the event SmileMakers determines that any proprietary information has been disclosed or is being used in violation of your obligation to keep such information confidential.

This letter is without prejudice to the rights, defenses, and remedies available to Staples and SmileMakers, whether at law or in equity. Staples and SmileMakers expressly reserve all rights, defenses, and remedies, and under no circumstances shall this letter constitute a waiver of any of Staples' or SmileMakers' rights, defenses, or remedies.

Very truly yours,

Scot Plotnick
Senior Employment and Labor Counsel

Enclosures

cc:    Paul Knutson, Vice President, Human Resources, Oriental Trading Company (w/encls.)



**CORPORATE**
4206 SOUTH 108TH STREET
OMAHA, NE 68137

PHONE (402) 331-5511

# ORIENTAL TRADING COMPANY, INC.
### ESTABLISHED 1932

Mr. Scot Plotnick
Senior Employment and Labor Counsel
Staples
500 Staples Drive
Framingham, MA  01702

Re:    SmileMakers

Dear Mr. Plotnick:

On May 7, 2004, I received your letter dated April 30, 2004 regarding my employment at Oriental Trading Company, Inc. ("OTC").

I can assure you that my position at OTC will not violate the terms of any agreement I have with Staples, Inc.  I can also assure you that I have no intention of soliciting SmileMakers' employees for employment elsewhere, nor do I have any intention of using or divulging proprietary information of SmileMakers.

OTC has not asked me to do anything in violation of the Staples agreements and has specifically instructed me not to use or disclose any confidential information of SmileMakers in the course of my employment with OTC.

I trust that addresses your concerns.  Should you have any further questions, please contact me.

Very truly yours,

Brady Gravett

cc: Mr. Bob Siffring
    Mr. Paul Knutson
    Mr. Joe Everhart

---

**MARKETING**
5455 SOUTH 90TH STREET
OMAHA, NE 68127

**WAREHOUSE LOCATIONS:**
26325 MAGNOLIA ROAD
UNDERWOOD, IA 51576

9101 "F" STREET
OMAHA, NE 68127

11112 "I" STREET
OMAHA, NE 68137



Staples®
500 Staples Drive
Framingham, MA 01702

Direct Dial: (508) 253-2091
Facsimile: (508) 253-1555
cindy.westervelt@staples.com

May 17, 2004

**VIA OVERNIGHT MAIL**

Mr. Stephen R. Frary
President
Oriental Trading Company
4206 South 108ᵗʰ Street
Omaha, NE  68137

Re:    Brady Gravett

Dear Mr. Frary:

As you know, Brady Gravett is a former SmileMakers associate and as such is bound by the terms of the Non-Compete and Non-Solicitation Agreement and the Proprietary and Confidential Information Agreement he signed while employed at SmileMakers (collectively, the "Agreements"). Scot Plotnick mailed you a copy of these Agreements on April 30, 2004. Mr. Joe Everhart of SmileMakers reviewed the respective obligations under the Agreements with Mr. Paul Knutson and Mr. Bob Goldsmith during a telephone conversation on April 30 as well.

Therefore, Oriental Trading Company is clearly on notice of Mr. Gravett's obligations under the Agreements. As you are aware, the Agreements prohibit Mr. Gravett from: (1) divulging any confidential and/or proprietary information of which he became aware at SmileMakers; (2) soliciting any SmileMakers associates or otherwise encouraging them to leave SmileMakers; and (3) competing with SmileMakers, particularly with respect to product lines which he was intimately familiar with at SmileMakers.

We are concerned that by hiring Mr. Gravett, Oriental Trading Company intends to obtain access to SmileMakers' proprietary information in order to gain an unfair business advantage in the market. SmileMakers simply will not tolerate any such unlawful tactics and is prepared to pursue every available remedy to protect its rights under these Agreements. In addition to instituting legal action against Mr. Gravett individually, SmileMakers is prepared to file a lawsuit against Oriental Trading Company

for, *inter alia,* tortuous interference with contract and business relations, misappropriation of trade secrets and unfair business practices.

Please provide written assurance to me by May 24, 2004 that Oriental Trading Company has not and will not violate or interfere with Mr. Gravett's Agreements. Failure to adequately respond in a timely manner will be deemed an admission your company is knowingly interfering with the Agreements. This letter is without prejudice to the rights, defenses and remedies available to SmileMakers now and in the future should additional information become available to us.

Sincerely,

Cindy Westervelt
Employment and Litigation Counsel

cc:    Mr. Joe Everhart
       Mr. Brady Gravett

**CORPORATE**
4206 SOUTH 108TH STREET
OMAHA, NE 68137



PHONE (402) 331-5511

# ORIENTAL TRADING COMPANY, INC.
ESTABLISHED 1932

### GENERAL COUNSEL'S OFFICE

Telefax: (402) 596-2492

May 21, 2004

**VIA FAX 508-253-1555 & MAIL**

Ms. Cindy Westervelt
Employment and Litigation Counsel
Staples
500 Staples Drive
Framingham, MA 01702

Re:    SmileMakers; Brady Gravett

Dear Ms. Westervelt:

Your letter to Steve Frary dated May 17, 2004 regarding Brady Gravett has been referred to me. I was surprised to see your letter because I thought that Mr. Everhart's concerns were addressed with his conversation with Mr. Goldsmith and Mr. Knutson.

I can assure you that Oriental Trading Company, Inc. ("OTC") respects the intellectual property rights and contractual rights of others and has no intention or desire to obtain any confidential or propriety information of Staples or SmileMakers or to interfere in any way with Mr. Gravett's contractual relationship with Staples.

I have discussed the matter of Mr. Gravett's employment with both Mr. Goldsmith and Mr. Knutson and I have reviewed the Staples, Inc. Propriety and Confidential Information Agreement and the Non-Compete and Non-Solicitation Agreement that Mr. Gravett provided and I have no reason to conclude that Mr. Gravett's employment at OTC will violate either agreement.

I can also assure you that OTC has told Mr. Gravett not to use or disclose any confidential information of Staples or SmileMakers in the course of his employment with OTC and to not engage in any activity which would violate the agreements.

---

**MARKETING**
5455 SOUTH 90TH STREET
OMAHA, NE 68127

**WAREHOUSE LOCATIONS:**
26325 MAGNOLIA ROAD
UNDERWOOD, IA 51576

9101 "F" STREET
OMAHA, NE 68127

11112 "I" STREET
OMAHA, NE 68137

Ms. Cindy Westervelt
May 21, 2004
Page 2

Should you have any further questions, please direct them to me.

Very truly yours,

ROBERT R. SIFFRING
General Counsel

RRS:lkp

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Staples, inc. v. Brady Gravett

*FILED*
*IN CLERKS OFFICE*

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

*2005 FEB 10  P 1:45*

*U.S. DISTRICT COURT*
*DISTRICT OF MASS.*

| | | |
|---|---|---|
| ☐ | I. | 160,410,470, R.23, REGARDLESS OF NATURE OF SUIT. |
| ☐ | II. | 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. |

Also complete AO 120 or AO 121
for patent, trademark or copyright cases

| | | |
|---|---|---|
| ☒ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
| ☐ | IV. | 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
| ☐ | V. | 150, 152, 153. |

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

YES ☐   NO ☒

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division?  -  (See Local Rule 40.1 (d)).

YES ☒   NO ☐

A. If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☒    Central Division ☐    Western Division ☐

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

YES ☐   NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Lynn A. Kappelman and Jennifer Serafyn

ADDRESS  Seyfarth Shaw LLP, Two Seaport Lane, Suite 300, Boston, MA 02210

TELEPHONE NO.  617-946-4800

(Coversheetlocal.wpd 10/17/02)

American LegalNet, Inc. | www.USCourtForms.com

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Staples, Inc. and Smilemakers, Inc.

## DEFENDANTS

Brady Gravett and Oriental Trading Company, Inc.

*IN CLERKS OFFICE*
*2005 FEB 10  P 1: 45*

**(b)** County of Residence of First Listed Plaintiff **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed ____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

*U.S. DISTRICT COURT*
*DISTRICT OF MASS.*

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Lynn A. Kappelman and Jennifer Serafyn
Seyfarth Shaw LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
Phone 617-946-4828; Fax 617-946-4801

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☒ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, where plaintiffs seeks injunctive relief to enforce an employment contract and prosecute other contract claims including misappropriation, exploitation, and misuse of business information and trade secrets.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE ____

DOCKET NUMBER ____

DATE
February 10, 2005

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

American LegalNet, Inc. | www.USCourtForms.com