UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STAPLES, INC., and )
SMILEMAKERS, INC. )
                              ) 05-10274 WGY
        Plaintiffs, )
                              )
v.                            ) Civil Action No. _____
                              )
BRADY GRAVETT and             )
ORIENTAL TRADING COMPANY, INC. )
                              )
        Defendants.           )

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I.   INTRODUCTION

In conjunction with its Complaint filed with the Court on February 11, 2005, the plaintiffs, Staples, Inc., and its subsidiary SmileMakers, Inc. (hereinafter collectively referred to as "SmileMakers" or the "Company"), seek to enjoin its former employee, Brady Gravett ("Gravett"), from directly or indirectly competing with SmileMakers, soliciting or contacting any SmileMakers clients or candidates, and using or disclosing SmileMakers' confidential business information, including trade secrets, all as provided in his Non-Compete and Non-Solicitation Agreement ("the 2003 Non-Compete Agreement") and his Confidential and Proprietary Information Agreement ("the 2003 Confidentiality Agreement").

In this case, Gravett resigned from SmileMakers in April 2004 and began working for Oriental Trading Company ("OTC"), SmileMakers' largest toy supplier and competitor. As set forth more fully in the Complaint, SmileMakers has recently obtained information confirming that Gravett assisted OTC in launching a licensed sticker offering, in clear violation of his 2003 Non-Compete and his 2003 Confidentiality Agreements. The Court should, therefore, grant

SmileMakers' motion for injunctive relief because: (1) there is a substantial likelihood that SmileMakers' will succeed on the merits of its Complaint; (2) SmileMakers will suffer irreparable harm if this Court does not grant an injunction; (3) such harm outweighs any injury that this Court's grant of injunctive relief would inflict upon the defendants; and (4) the public interest will not be adversely affected if this Court grants the injunction.

## II.   FACTUAL BACKGROUND

For over 25 years, SmileMakers has supplied stickers and inexpensive toys to pediatricians, dentists, teachers and other professionals who interact with children. The Company does so by distributing colorful catalogues and attracting buyers to its web site. SmileMakers distinguishes itself by constantly developing new stickers and toys, and it invests significant capital in a team of researchers who stay current with popular children's trends and analyze the packaging formats that are the most profitable. SmileMakers offers a wide range of products to customers around the globe.

### A.   Gravett's Employment with SmileMakers

SmileMakers hired Gravett in September 1998, even though he did not have a college degree and had no prior experience in the toy, novelty, and sticker industry.[1] After he was hired, Gravett executed a Confidentiality and Non-Competition Agreement ("the 1998 Agreement"). See Ex. 1. During Gravett's employment, SmileMakers provided him with extensive on-the-job training and reviewed his progress regularly.

As a Merchandiser, Gravett had access to SmileMakers' trade secrets and confidential information. Gravett's duties and responsibilities included, without limitation, (i) attending trade shows and vendor meetings; (ii) understanding customers and their needs; (iii) understanding

---

[1] Accordingly, all of the knowledge, experience, and customer contacts in the industry that Gravett had at the time he resigned from SmileMakers, he acquired while employed by SmileMakers.

kids market trends; (iv) recommending and sourcing new product lines; (v) setting price points on new products to meet margin objectives; (vi) setting up and coding products accurately to facilitate ordering and tracking; (vii) recommending quantity per unit and initial order quantity; (viii) providing SmileMakers' creative department the necessary information for product advertising; and (ix) proofreading new products on catalogue pages to verify code, name, description, quantity, and price. As part of these duties, Gravett had access to SmileMakers' trade secrets and confidential information.

### 1. Gravett's access to SmileMakers' trade secrets and confidential information.

As part of his training, and to enable him to perform his job, SmileMakers entrusted Gravett with confidential information, including trade secrets, such as: (i) the identity, requirements, creditworthiness, preferences, and needs of specific customers, as well as certain customer information not publicly available; (ii) the identity of vendors, distribution channels, prices, and availability of toys, novelties, and stickers from specific suppliers; and (iii) pricing policies and information, financial information, merchandising, packaging, negotiating and sales strategies, and other selected business information about SmileMakers not publicly available.

SmileMakers provided Gravett access through his work computer to the Company's private database, which it developed over several years. The database contains information about active, creditworthy customers and suppliers, as well as their buying and selling needs and practices. For instance, SmileMakers has confidential information about the identity, contact information, and buying habits of certain customers as well as the identity, contact information, and cost flexibility of certain vendors. Finally, SmileMakers maintains information about the best selling children's toys, novelties, and stickers; it maintains as private certain information

about product pricing and packaging techniques. This information is confidential, not publicly available, and critical to SmileMakers' business.

### 2. SmileMakers' goodwill.

SmileMakers' success depends in large part on its goodwill with both its customers and suppliers. The strong relationships that the Company has developed with these accounts, as well as SmileMakers' reputation, allow it to obtain important confidential information from its customers and suppliers and make certain sales. Accordingly, in order to perform his job, Gravett dealt directly and repeatedly with SmileMakers' customers, vendors, and suppliers. SmileMakers introduced Gravett to its customers and vendors and provided him resources to develop customer, vendor, and supplier relationships by using SmileMakers' goodwill. For instance, Gravett established relationships with, among others, SmileMakers' key licensed sticker vendor, Sandy Lion, and SmileMakers' largest toy supplier, OTC.

### 3. Gravett's Non-Compete and Confidentiality Agreements.

In or about June 2002, Staples, Inc. bought Medical Arts Press, Inc. and its wholly owned subsidiary, SmileMakers, Inc. On January 27, 2003, Gravett signed a new "Non-Compete and Non-Solicitation Agreement" ("the 2003 Non-Compete") as well as a separate "Proprietary and Confidential Information Agreement" ("the 2003 Confidentiality Agreement"). See Exhibits 2 and 3. In consideration for his execution of these agreements, the Company granted Gravett 500 stock options in Staples' stock on February 1, 2003.

Paragraph 2 of the 2003 Non-Compete Agreement provides, in pertinent part:

> For all periods beginning upon the date hereof and ending one year from the date of termination of his/her employment with the Company (the "Non-compete and Non-solicitation Period"), Executive shall not:
>
> Directly or indirectly as owner, partner, joint venturer, stockholder, employee, broker, agent, principal, trustee, corporate officer,

> director, licensor, licensee, franchisee, or in any capacity whatsoever engage in, become financially interested in, be employed by or have any business or professional connection with any business that competes with the Company, including but not limited to any business engaged in, or which plans to engage in, the sale or distribution of office products or related services, including without limitation consumable office supplies, business machines and computers, office technology, telecommunication systems and services, and/or office furniture in any country where the Company or any of its subsidiaries is then engaged in such sales or distribution; provided, however, that Executive may own any securities of any corporation which is engaged in such business and is publicly owned and traded but in an amount not to exceed at any one time one percent of any class of stock or securities of such corporation.

The 2003 Non-Compete Agreement also states that during his employment, and for a one-year period after the termination of his employment with SmileMakers, Gravett could not:

> Solicit, hire, offer employment to, or in any manner encourage employees of the Company to leave its employ. Executive further agrees that during such period he/she shall not directly or indirectly solicit, hire, or offer employment to any former employees who were employed by the Company at any time during Executive's final six months of employment with the Company.

The 2003 Confidentiality Agreement contains provisions regarding non-disclosure of confidential information, including trade secrets. The confidentiality provisions prohibit Gravett from using or disclosing any of SmileMakers' confidential information, and other business information that SmileMakers disclosed to Gravett. Specifically, the 2003 Confidentiality Agreement states, in relevant part:

> All Proprietary Information shall be the sole property of the Company and its assigns, and the Company and its assigns shall be the sole owner of all rights in connection therewith. I hereby assign to the Company any rights I may have or acquire in all Proprietary Information. At all times, both during my employment by the Company and after its termination, I will keep in confidence and trust, and not use to the detriment of the Company or for the benefit of myself or any third party, all Proprietary Information or anything relating to it without the written consent of the Company,

> except as may be necessary in the ordinary course of performing
> my duties as an employee of the Company.

Finally, in both the 2003 Non-Compete Agreement and the 2003 Confidentiality Agreement, Gravett agreed that SmileMakers had the right to seek injunctive relief if he breached the covenants set forth therein. Additionally, Paragraph 7 of the 2003 Non-Compete Agreement stated that in the event Gravett breached the Agreement, the non-competition and non-solicitation periods would be tolled until the breach had been duly cured.

Because SmileMakers' goodwill and confidential information are so important to its business, SmileMakers takes extensive efforts to protect these assets. For example, in addition to the Company's specific policies and practices established to protect its confidential information, SmileMakers has for many years required certain employees with access to confidential information to sign agreements that, among other things, prohibit them from competing with SmileMakers for a one-year period following the termination of their employment. These agreements also prohibit them from soliciting any SmileMakers customer or employee for the same period of time and from disclosing or using confidential information, including trade secrets.

### B.    Gravett's Competition with SmileMakers.

On or about April 16, 2004, Gravett abruptly resigned from SmileMakers. At that time, Gravett's annual salary was $49,557.00, plus benefits and the opportunity to earn a 10% bonus if the Company reached a certain performance target. Soon after Gravett resigned, Clift Garret, Director of Operations at SmileMakers, learned from OTC that it had hired Gravett. OTC advertises itself on its web site as a "direct marketer of value-priced novelties, toys, party supplies, crafts, gift items, home décor products and garden accents." Like SmileMakers, OTC uses colorful catalogues and web sites to offer a wide range of toys and novelty products to

customers around the globe.

Once SmileMakers learned that Gravett was going to work for OTC, Laurie Furse ("Furse"), SmileMakers' Marketing Director, and others escorted Gravett to his desk to get his belongings. She then reminded Gravett of his obligations under the 2003 Non-Compete and 2003 Confidentiality Agreements, and Gravett assured Furse that he was going to work with OTC solely as a buyer. He added that he was not going to be involved with marketing decisions because he understood his obligation not to divulge SmileMakers' trade secrets. A few days later, Furse learned that Gravett had been carrying large boxes out to his car prior to his resignation.

At the time that Gravett left SmileMakers to work for OTC, OTC did not offer licensed stickers in its catalogue or on its web site. Soon after he resigned from SmileMakers, however, Gravett helped OTC develop a competing licensed sticker product, concealing his activities at OTC and the nature of his new job from SmileMakers. On or about April 30, 2004, Scott Plotnik, Senior Employment and Labor Counsel at Staples, wrote a letter to Gravett reiterating the terms of Gravett's 2003 Non-Compete and 2003 Confidentiality Agreements and explaining "by taking a position with OTC, [Gravett was] in violation of the Non-Compete and Non-Solicitation Agreement and Proprietary and Confidential Information Agreement [he] signed while at SmileMakers ..." Ex. 4. In response, Gravett sent a letter stating, "I can assure you that my position at OTC will not violate the terms of any agreement I have with Staples, Inc. I can also assure you that I have no intention of soliciting SmileMakers' employees for employment elsewhere, nor do I have any intention of using or divulging proprietary information of SmileMakers." Ex. 5. Staples' counsel also reminded OTC's President of Gravett's contractual obligations. OTC's counsel acknowledged these obligations and, like Gravett, assured

SmileMakers that it would not misappropriate its confidential information or interfere with the Company's and SmileMakers' relationships with its customers and suppliers. See Exs. 6 and 7.

Despite the foregoing, Gravett and other OTC employees have used and exploited Gravett's knowledge of SmileMakers' confidential information and SmileMakers' goodwill to develop and merchandise a new line of licensed stickers which directly compete with SmileMakers' own sticker line. In helping OTC develop this new offering, Gravett has improperly used and disclosed SmileMakers' trade secrets and confidential information.

### III.  ARGUMENT

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court may enter a temporary restraining order to prevent irreparable harm to the plaintiff, pending a hearing on a preliminary injunction. Plaintiff can satisfy its burden of proof by establishing that: (1) there is a likelihood of success on the merits, (2) it will suffer irreparable injury if the injunction is not granted, (3) such injury outweighs any harm that granting injunctive relief would inflict on the Defendants, and (4) the public interest will not be adversely affected by the granting of the injunction. See Planned Parenthood League of Massachusetts v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981); Packaging Industries Group v. Cheney, 380 Mass. 609, 617 (1980).

#### A. SmileMakers is Likely to Succeed on the Merits of its Claims Against Defendants.

##### 1. Gravett breached his Non-Compete and Confidentiality Agreements.

SmileMakers is likely to succeed on its claim against Gravett for breaching the provisions of his 2003 Non-Compete and Confidentiality Agreements. Non-competition agreements are enforceable in Massachusetts so long as they are: (1) necessary to protect an employer's legitimate business interest, including trade secrets, confidential information, and goodwill, (2) supported by consideration, (3) reasonably limited in time and geographic scope, and (4)

consonant with the public interest. See, e.g., Marcam Corp. v. Orchard, 885 F.Supp. 294, 299 (D. Mass. 1995); Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 102-03 (1979); All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974); Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 287 (1974). If a legitimate business interest is "present in a given case in which a noncompetitive covenant is part of a contractual agreement ... a court will not deny enforcement of a reasonable covenant." New England Canteen Serv., 372 Mass. 671, 674 (1997); see also, Boch Toyota, Inc. v. Klimoski, Norfolk Super. Ct. No. 04-966 (June 28, 2004)(Graham, J.).

Gravett's 2003 Non-Compete Agreement is reasonable and should be enforced by this Court. Paragraph 2 of the Non-Compete Agreement that Gravett signed in 2003 provides that he may not, for one year from his termination from SmileMakers for any reason, "[d]irectly or indirectly ... engage in, become financially interested in, be employed by or have any business or professional connection with any business that competes with the Company ..." Exhibit 1. Gravett has violated this provision by working for OTC, SmileMakers' direct competitor.

Courts have frequently enforced such agreements against former employees who attempt to usurp those customer relationships for their own benefit or a competitor's benefit. See Marcam, 885 F. Supp. at 298; see also, All Stainless, 364 Mass. at 778 ("the former employee's close association with the employer's customers may cause those customers to associate the former employee, and not the employer, with products of the same type sold to the customer through the efforts of the former employee"); National Hearing Aid Centers, Inc. v. Avers, 2 Mass.App.Ct. 285, 291 (1974)(the type of goodwill protected by an Agreement is "such as 'could be harmed by a former salesman's calling on [the former employer's] customer, with whom he had previously dealt, to solicit purchases on behalf of a new employer'"). Gravett used SmileMakers' goodwill and confidential information in conducting business with SmileMakers'

customers and suppliers. In becoming employed by OTC, Gravett is able to exploit, and has exploited and used, that goodwill and confidential information for his own and OTC's benefit. In view of the nature of SmileMakers' and OTC's global business, which depends in large part on its reputation and contacts with its customers, vendors, and suppliers, the non-competition provision cannot be more limited geographically, and it is clearly targeted at protecting SmileMakers' legitimate business interests.

Further, the one-year scope of Gravett's non-competition agreement is reasonable. Indeed, Courts have routinely upheld greater restrictions on competition by a former employee. See Marine Contractors Co., Inc., 365 Mass. at 289 (determining that three-year period "is not excessive or unreasonable" under the circumstances); All Stainless, 364 Mass. at 778 (holding that a two-year non-competition term was enforceable); Bowne of Boston, Inc. v. Levine, 1997 WL 781444, at **4 (Mass. Super. Ct. 1997) (finding that two-year duration of non-solicitation agreement is not unreasonable). Moreover, SmileMakers gave Gravett valid consideration, in the form of 500 stock options and employment, in exchange for his agreement not to compete and not to disclose confidential information. Accordingly, it would be inequitable for this Court to deny Staples and SmileMakers the benefit of its bargain with Gravett.

### 2. SmileMakers is likely to prevail on its claim against Gravett for breach of the duty of loyalty and fiduciary duty.

Gravett breached the duty of loyalty and fiduciary duty he owed to SmileMakers. As a Merchandisor for SmileMakers, Gravett occupied a position of trust. As such, he owed a duty of loyalty and a fiduciary duty to protect the interests of the corporation. See, e.g., Orkin Exterminating Co., Inc. v. Rathje, 72 F.3d 206, 207 (1st Cir. 1995); Cecconi v. Cecco, Inc., 739 F.Supp. 41, 45 (D. Mass. 1990); Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 11 (1983); Geller v. Allied-Lyons PLC, 42 Mass. App. Ct. 120, 122 (1997).

The duty of loyalty requires employees "to be loyal to the corporation and to refrain from promoting their own interests in a manner injurious to the corporation." Geller, 42 Mass. App. Ct. at 122. An employee breaches his duty of loyalty by using or disclosing confidential information entrusted to him during his employment, acting for his own interests at the expense of his employer, actively competing with his employer during the tenure of his employment, or soliciting customers. See Diversified Ventures, Inc. v. Moriarty, 1994 Mass. Super. LEXIS 249, 54-55 (Mass. Super. Ct. 1994). Gravett has engaged in each of these prohibited activities. For instance, during his employment with SmileMakers, Gravett negotiated with OTC on his own behalf to secure a job with OTC. After resigning, Gravett began working for OTC and disclosed SmileMakers' trade secrets and confidential information for his own and OTC's benefit. At OTC, Gravett has been performing similar duties that he performed at SmileMakers. Without an injunction, Gravett will continue to breach his duty of loyalty and fiduciary duty to SmileMakers and capitalize on its goodwill.

### 3. Gravett and OTC misappropriated Staples' trade secrets and confidential information.

Gravett used improper means, in breach of his contractual and common law post-employment obligations to SmileMakers, to acquire and use its trade secrets and confidential information to develop and market a sticker line for OTC. Massachusetts courts recognize an implied contract in the employer-employee relationship that prohibits a former employee, regardless of his or her position, "from using, for his own advantage or that of a rival and to the harm of his employer, confidential information that he has gained in the course of his employment." Woolley's Laundry, Inc. v. Silva, 304 Mass. 383, 386 (1939); see also, Eastern Marble Products v. Roman Marble, 372 Mass. 835, 841 (1977); Jet Spray Cooler v. Crampton, 361 Mass. at 839. Staples has "the right to keep the work which it has done, or paid for doing, to

itself. The fact that others might do similar work, if they might, does not authorize them to steal the plaintiff's." Diversified Ventures, Inc. v. Moriarty, 1994 Mass. Super. LEXIS 249, *52 (Mass.Super.Ct. 1994)(quoting Board of Trade v. Christie Grain Stock Co., 198 U.S. 236, 250 (1905)).

The information that Gravett has stolen from SmileMakers is clearly proprietary and entitled to protection. Business information is confidential, and thus protectable, if: (1) it is not known outside of the business; (2) it is made available to employees within the Company with a need to know; (3) the Company takes significant measures to guard the secrecy of the information, including its requirement that these employees agree to confidentiality covenants; (4) the information is extremely valuable to the Company and to its competitors; (5) the Company has exhausted significant effort and expense in developing this information over many years; and (6) this information is not easily obtainable by others. See Jet Spray Cooler, 361 Mass. at 840, appeal after remand, 377 Mass. 159 (1979).

In addition to Gravett, who had access to SmileMakers' trade secrets and confidential information, OTC is also liable for misappropriation of trade secrets. Where a new employer has actively participated in an employee's misconduct, the employer may properly be enjoined from using the misappropriated confidential information. See W.B. Mason Co., Inc. v. Staples, Inc., 2001 Mass. Super. LEXIS 50, *23 (Mass.Super.Ct. 2001)(finding likelihood of success on the merits of intentional interference with contractual relations claim against new employer who induced employees to resign from Staples and work for competing company).

4. **SmileMakers is likely to succeed on the merits of its claims against OTC and Gravett for tortious interference with contract and advantageous business relations.**

To prevail on a claim for tortious interference with contract or advantageous business relations, the plaintiff must establish: (1) the existence of a contract or advantageous business relationship with a third party; (2) the defendant's knowledge of the contract or business relationship; (3) the defendant's intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages. See, e.g., G.S. Enterp., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 271 (1991); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990). SmileMakers has satisfied each of the four elements of this claim.

It is undisputed that SmileMakers has contracts with its suppliers and advantageous business relationships with its customers. The evidence also establishes that OTC is aware of these relationships, and was aware of Gravett's employment contracts with SmileMakers' parent company, Staples, and intentionally interfered with them. For instance, on May 17, 2004, Staples' Employment and Labor Counsel, Cindy Westervelt, wrote a letter to OTC's President, Stephen Frary, advising him of Gravett's non-competition and non-disclosure obligations to the Company, as well as their concern that OTC intended to gain an unfair business advantage by using SmileMakers' confidential information. By letter dated May 21, 2004, OTC's General Counsel, Robert R. Siffrin, responded, stating: "I can assure you that Oriental Trading Company respects the intellectual property rights and contractual rights of others and has no intention or desire to obtain any confidential or proprietary information of Staples or SmileMakers or to interfere in any way with Mr. Gravett's contractual relationship with Staples." Exhibit 7. By its counsel's own admission, OTC was aware of Gravett's contractual obligations to SmileMakers and its parent Company, Staples. Nevertheless, OTC facilitated Gravett's breach of his Non-Competition and Confidentiality Agreements; OTC has knowingly capitalized on this breach by

using Gravett's knowledge of SmileMakers' customers and suppliers, their pricing history, and preferences, to develop a sticker line for OTC that directly competes with SmileMakers' sticker line.

### 5. **Both Gravett and OTC have violated M.G.L. c. 93A.**

Smile Makers will likely prevail on its Chapter 93A claims against Gravett and OTC. Massachusetts General Laws Chapter 93A prohibits unfair and deceptive acts or practices that "arise in dealings between discrete, independent business entities." Manning v. Zuckerman, 388 Mass. 8, 12 (1983). Gravett and OTC have engaged in unfair and deceptive conduct by, among other things, misappropriating SmileMakers' trade secrets, confidential information, and goodwill. Moreover, OTC and Gravett intentionally and with an improper motive interfered with SmileMakers' contractual and advantageous relations. See M.G.L. c. 93, §§ 2, 11; see also, Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 48 (1998)(finding that plaintiff sustained claim for violation of Chapter 93A based on misappropriation of confidential business information).

### B. **SmileMakers and its parent Company, Staples, Will Suffer Irreparable Injury if the Court Does Not Grant the Restraining Order and Injunction.**

SmileMakers will suffer immediate, substantial, and irreparable harm if this Court does not enjoin Gravett and OTC from violating the restrictive covenants contained in Gravett's 2003 Non-Compete Agreement and 2003 Confidentiality Agreement. If Gravett and OTC continue to compete unfairly and misappropriate SmileMakers' trade secrets and confidential information, the confidentiality of such information will be lost forever.

Massachusetts courts routinely enjoin former employees from using or disclosing trade secrets and confidential information because "the disclosure of confidential information has been recognized as being particularly hard to quantify, giving rise to the need for equitable relief."

Intelligent Biocides, Middlesex Superior Ct. No. 00-0508 (Feb. 25, 2000); see also, General Electric Co. v. Sung, 843 F. Supp. 776, 778 (D. Mass. 1994)(imposing seven-year injunction against the defendant for misappropriation of trade secrets). Equitable relief is necessary in this case because "once the confidential information is in the hands of a competitor ... there is no way to make it confidential again." Id.

### C. SmileMakers' Irreparable Injury Outweighs any Harm that the Defendants may Suffer.

The balance of hardships tips strongly in SmileMakers' favor. The harm that SmileMakers will suffer as a result of this misappropriation far outweighs the prejudice that OTC and Gravett will suffer if they are forced to abandon the licensed sticker business for the duration of the non-compete. Gravett knowingly entered into the 2003 Agreements and received 500 stock options as compensation. SmileMakers is not asking this Court to prevent Gravett from making a living or prevent OTC from *fairly* competing with SmileMakers. See, e.g., Browne v. Merkert Enterp., Inc., 1998 WL 151253 (Mass. Super. Ct. 1998)(finding that former employee's right to earn a living is not unreasonably curtailed by the enforcement of a non-competition agreement). To the contrary, SmileMakers seeks to prevent the defendants from continuing to misappropriate and use SmileMakers' valuable trade secrets, confidential information, and goodwill.

### D. The Public Interest Will Not be Adversely Affected.

Injunctive relief in this case will serve the public interest by enforcing valid contractual provisions, protecting trade secrets, and preventing unfair competition. It is in society's best interest "to recognize and enforce agreements which were voluntarily entered into and accepted. Allowing an individual to disregard such a promise would result in behavior which should not be condoned or encouraged." New England Circuit Sales, Inc v. Randall, 1996 WL 1171929, *3

(D.Mass. 1996); see also, Philips Electronics North America Corp. v. Halperin, 2000 WL 33171040, *4 (Mass.Super.Ct. 2000). The public interest will be served in the instant matter by the issuance of the requested injunctive relief. See Marcam v. Orchard, 885 F.Supp. at 299.

## CONCLUSION

For the foregoing reasons, this court should grant SmileMakers' motions for a temporary restraining order and a preliminary injunction.

Respectfully submitted,

STAPLES, INC. and
SMILEMAKERS, INC.
By their attorneys,

Lynn A. Kappelman (BBO No. 642017)
Jennifer A. Serafyn (BBO No. 653739)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
(617) 946-4800

Dated: February 10, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the defendants, Brady Gravett, 14451 Erskine Street, Omaha, Nebraska 68116 and Oriental Trading Company, 4206 South 108th Street in Omaha, Nebraska 68137-1215 by hand on February 11, 2005.

Lynn A. Kappelman